UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CARIN MILLER,

   Plaintiff,

-v-

EXPERIAN INFORMATION SOLUTIONS
INC., et al.,

   Defendants.

Case No. 3:13-cv-090

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING MILLER'S MOTION TO STRIKE (Doc. #72) AND DENYING MILLER'S MOTION FOR SUMMARY JUDGMENT (Doc. #63)**

---

  Plaintiff Carin Miller ("Miller") has filed an Amended Complaint against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), Transunion LLC ("Trans Union"), Wites & Kapetan, P.A. ("W & K"), Infinity Marketing Solutions, Inc. ("Infinity"), Equifax Information Services LLC ("Equifax Information") and Doe Company Debt Collector. (Doc. #41.) Miller sued all of the Defendants for violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq.

  Miller also sued, what she terms, the "Debt Buyers" for invasion of privacy - wrongful intrusion. In her Amended Complaint, she defines the "Debt Buyers" as W & K, Infinity and Doe Company Debt Collector. (Doc. #41, ¶ 12.)

  The Doe Company Debt Collector has not yet been identified. Experian and W & K have been dismissed by Miller. (Doc. #56.) Infinity has been served but has not answered or otherwise defended within the allotted time. Therefore, Infinity has been adjudged to be in default (doc. #25), but the Court has elected to not yet enter default judgment against Infinity (doc. #28). On

June 19, 2014, Miller filed a Notice of Settlement with Defendants Equifax and Equifax Information, although the stipulated dismissal with prejudice of these two Defendants specified in the Notice of Settlement has not yet been filed. (Doc. #45.) The only remaining active Defendant, then, is Trans Union.

Now before the Court is Miller's Motion for Summary Judgment against Trans Union. (Doc. #63.) This Motion is fully briefed and ripe for decision. Also before the Court is a Motion To Strike an Affidavit submitted by Trans Union in response to Miller's Motion for Summary Judgment. (Doc. #72.) This Motion too is now fully briefed and ripe for decision.

The Motion To Strike will first be addressed. This will be followed by the relevant factual background, the standard of review for motions for summary judgment, other relevant legal provisions and an analysis of Miller's Motion for Summary Judgment.

## MOTION TO STRIKE

Trans Union submitted the Declaration of Kate Anderson ("Anderson") as part of its Response to Miller's Motion for Summary Judgment. Anderson is a Compliance Consultant and Custodian of Records for Trans Union Interactive, Inc. ("TUI").

Miller then moved to strike Anderson's Declaration because Anderson was not identified as a witness to testify regarding a certain report. Trans Union has not filed a witness list but does not dispute that Anderson was not identified. Trans Union does, however, oppose Miller's Motion To Strike because all of the information contained in Anderson's Declaration was previously made known to Miller.

The Federal Rules of Civil Procedure provide that, if a party fails to identify a witness, as required by Rule 26(a) or (e), the party may not use that information or witness to supply

evidence on a motion unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Rule 26(a) requires a party to provide the name of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses. Rule 26(e) requires the disclosures made under Rule 26(a) to be supplemented or corrected in a timely manner or as ordered by the Court.

Thus, whether the information contained in Anderson's Declaration was previously made known is irrelevant to whether Anderson may submit evidence. If Anderson was not identified as an individual likely to have discoverable information in accordance with Rule 26, Anderson's Declaration cannot be used to support Trans Union's claims. Anderson's Declaration must be struck.

Miller's Motion To Strike (doc. #72) is granted. Anderson's Declaration cannot be used to decide Miller's pending Motion for Summary Judgment.

## RELEVANT FACTUAL BACKGROUND[1]

When this lawsuit was filed, Miller was a resident of Ohio. (Am. Compl. ¶ 2.) Trans Union is a nationwide credit reporting agency. (Id. at ¶ 6.)

### The October 2013 Credit Report

Miller received a report on October 3, 2013 (the October 2013 Credit Report") from tui.transunion.com. (Affidavit of Carin Miller ("Miller Aff.") ¶ 2, Ex. A.) Under the heading "Inquiries," the October 2013 Credit Report listed COAF, BMW & MINI, FIFTH THIRD, DISCOVER, CAP ONE, NCB MGMT, DISCOVER and LANDINGS APT. (Id. at Ex A.)

---

[1]For purposes of a motion for summary judgment, the facts are viewed in a light most favorable to the nonmoving party, Trans Union in this case.

The October 2013 Credit Report is from a TUI website. (Id. Ex. A.) It is captioned "Online Personal Credit Reports & Credit Scores - TransUnion Credit Monitoring." (Id.; see also Deposition of Carin R. Miller ("Miller Dep.") 73-75, August 12, 2014.)

Miller received an email receipt for obtaining the free October 2013 Credit Report. (Miller Dep. 73-75.) She received this email from transunion@e-tui.transunion.com. (Id.) This email references details of the ordering of a three-bureau-credit-monitoring-report. (Id.) Further, the October 2013 Credit Report indicates that the credit reporting agencies are TransUnion, Experian and Equifax. (Miller Aff. Ex. A.)

The June 2014 Credit Report

On August 1, 2014, Trans Union produced, via discovery, a credit report dated June 4, 2014 (the June 2014 Credit Report"). (Id. at ¶ 4, Ex. B.) The June 2014 Credit Report has three (3) Inquiries sections: "Regular Inquiries," "Promotional Inquiries," and "Account Review Inquiries." (Id. Ex. B.) The "Regular Inquiries" section lists CAPITAL ONE AUTO FINANCE, BMW MINI OF SOUTH AT via NCC/BMW & MINI SO ATLANT, FIFTH THIRD BANK, DISCOVER FINANCIAL SVC AND CAPITAL ONE BANK USA NA. (Id.) The "Promotional Inquiries" section lists MERRICK BANK, ONEMAIN FINANCIAL, GE MONEY, AUTOMATIVE PRODUCT CONSU, PLAIN GREEN, WEBBANK/FINGERHUT, RISE, THE TRAVELERS COMPANIES, TUNICA BILOXI TRIBE OF LA, AMERICAN FAMILY INSURANCE, ORION ACCEPTANCE CORP and GRANITE BAY ACCEPTANCE I. (Id.) The June 2014 Credit Report indicates that eight (8) of the Promotional Inquiries were received within the one-year period before the October 2013 Credit Report was issued. (Id.) The "Account Review Inquiries" section lists DISCOVER FINCL SVC LLC, DISCOVER

FINANCIAL SERVI, CAPITAL ONE BANK USA NA, BMW FINANCIAL SERVICES, BANK OF AMERICA, SM SERVICING, TRANSUNION INTERACTIVE, CARIN REBECCA MILLER via TRANSUNION INTERACTIVE I, ASSET ACCEPTANCE RECOVER, CREDIT CONTROL SERVICES and NCB MANAGEMENT SERVICES. (Id.) The June 2014 Credit Report indicates that three (3) of these "Account Review Inquiries" were received before the October 2013 Credit Report was issued. (Id.)

The July 2014 Credit Report

Trans Union also produced a credit report dated July 31, 2014 (the July 2014 Credit Report"). (Id. at Ex. C.) The July 2014 Credit Report has three (3) inquiries sections: "Regular Inquiries," "Promotional Inquiries," and "Account Review Inquiries." (Id.) The "Regular Inquiries" section lists CAPITAL ONE AUTO FINANCE, BMW MINI OF SOUTH AT via NCC/BMW & MINI SO ATLANT, FIFTH THIRD BANK, DISCOVER FINANCIAL SVE AND CAPITAL ONE BANK USA NA. (Id.) The "Promotional Inquiries" section lists CNU ONLINE NETCREDIT, GETTINGTON, MERRICK BANK, ONEMAIN FINANCIAL, AMICA INSURANCE, GE MONEY, AUTOMATIVE PRODUCE CONSU, PLAIN GREEN, WEBBANK/FINGERHUT and RISE. (Id.) The July 2014 Credit Report indicates that all of these Promotional Inquiries were received in the one-year period before the June 2014 Credit Report, and all but three (3) of them are listed on the June 2014 Credit Report. (Id. Ex. B, Ex. C.) The "Account Review Inquiries" section lists STATE FREE DISCLOSURE, DISCOVER FINCL SVE LLC, DISCOVER FINANCIAL SERVI, BMW FINANCIAL SERVICES, CAPITAL ONE BANK USA NA, BANK OF AMERICA, SM SERVICING, TRANSUNION INTERACTIVE I, CARIN REBECCA MILLER via TRANSUNION INTERACTIVE I, ASSET

ACCEPTANCE RECOVER, CREDIT CONTROL SERVICEWS and NCB MANAGEMENT SERVICES. (Id. at Ex. C.) The July 2014 Credit Report indicates that three (3) of these inquiries were received within the one-year period before the October 2013 Credit Report was issued. (Id.)

## STANDARD OF REVIEW

Miller's Motion for Summary Judgment is brought pursuant to Fed. R. Civ. P. 56. Rule 56 and its associated caselaw establish the standard of review for summary judgment.

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to

"simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## RELEVANT LEGAL PROVISIONS

Miller claims that Trans Union has violated the FCRA. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b). Generally, the FCRA requires consumer reporting agencies to accurately disclose all information in the consumer's file to the consumer at the time of the request. 15 U.S.C. § 1681g(a)(1). Consumer reporting agencies must also disclose each person that procured a consumer report for any purpose during the one-year period preceding the date on which the request is made and a record of all inquiries received during the one-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer. 15 U.S.C. § 1681g(a)(3)(A)(ii) and 1681G(a)(5). Finally, the FCRA provides for compensatory damages, statutory damages, punitive damages and attorneys' fees for wilful noncompliance. 15 U.S.C. 1681n.

A "consumer" is defined in the FCRA as "an individual." 15 U.S.C. § 1681a(c). A "consumer report" is defined in the FCRA as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumers eligibility for… credit." 15 U.S.C. § 1681a(d). Finally, a consumer reporting agency is any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or

evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. §1681a(f).

## ANALYSIS

Miller argues that Trans Union has wilfully violated the FCRA by deliberately failing to disclose certain required information, and by intentionally providing a "Credit Monitoring Product" instead of a complete consumer report. Trans Union responds that Miller did not purchase any report from Trans Union, and that Miller purchased a credit monitoring report instead of a consumer disclosure report from TUI, a Trans Union subsidiary.

There is no dispute that Miller is a consumer as defined in the FCRA and Trans Union is a consumer reporting agency. Thus, each of the three (3) reports identified by Miller must be examined to determine if they violate the FCRA.

### The October 2013 Credit Report

Miller attests that she ordered the October 2013 Credit Report from Trans Union. (Miller Aff. ¶ 2.) However, the copy of the October 2013 Credit Report that she attaches to her Affidavit indicates that the report is from TUI[2] (id. at Ex. A) and is not a consumer credit report as defined in and regulated by the FCRA. Thus, there is a question of fact as to whether Miller asked for and received a credit report or a credit monitoring report. Therefore, Miller has not shown that she is entitled to summary judgment on the October 2013 Credit Report.

### The June 2014 Credit Report

Miller obtained the June 2014 Credit Report from Trans Union during discovery. The

---

[2]TUI is a subsidiary of Trans Union.

June 2014 Credit Report appears to be a consumer disclosure as specified by the FCRA. 15 U.S.C. § 1681(g).

Miller argues that the June 2014 Credit Report identifies certain "inquiries" that should have, based upon the FCRA, appeared on the October 2013 Credit Report but did not. However, as determined above, the October 2013 Credit Report presented by Miller is not a consumer credit report regulated by the FCRA. Therefore, Miller is not entitled to summary judgment on the June 2014 Credit Report on this basis.

Miller also argues that the July 2014 Credit Report[3] identifies certain "inquiries" that should have, based upon the FCRA, appeared on the June 2014 Credit Report. Specifically, the CNU ONLINE NETCREDIT, GETTINGTON and AMICA INSURANCE Promotional Inquiries appeared on the July 2014 Credit Report but not on the June 2014 Credit Report. Also, the inquiry that resulted in the June 2014 Credit Report was never disclosed in the July 2014 Credit Report.

The July 2014 Credit Report indicates that the CNU ONLINE NETCREDIT inquiry occurred on May 28, 2014, the GETTINGTON inquiry occurred on May 5, 2014, and the AMICA INSURANCE inquiry occurred on March 15, 2014. The June 2014 Credit Report indicates that it was issued on June 4, 2014. Thus, three (3) of the four (4) inquiries were made in the year proceeding the June 2014 Credit Report. However, the June 2014 Credit Report was not made in the year preceding the June 2014 Credit Report.

The FCRA requires that disclosures to consumers include "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the

---

[3]The July 2014 Credit Report is more fully discussed below.

consumer in connection with a credit or insurance transaction that was not initiated by the consumer." 15 U.S.C. § 1681(g)(a)(5).[4] Thus, in this case, the June 2014 Credit Report, Trans Union's disclosure via discovery to Miller, is not in compliance with the FCRA because it does not report three (3) inquiries received by Trans Union during the 1-year period preceding the request. Therefore, Miller may be entitled to summary judgment on the June 2014 Credit Report that Trans Union provided in discovery because this report is not in compliance with the FCRA.

The July 2014 Credit Report

Miller obtained the July 2014 Credit Report from Trans Union during discovery. The July 2014 Credit Report appears to be a consumer disclosure as specified by the FCRA. 15 U.S.C. § 1681(g).

Miller argues that the July 2014 Credit Report identifies certain "inquiries" that should have, based upon the FCRA, appeared on the October 2013 Credit Report but did not. However, as determined above, the October 2013 Credit Report presented by Miller is not a consumer credit report regulated by the FCRA. Therefore, Miller is not entitled to summary judgment on the July 2014 Credit Report on this basis.

## SUMMARY

Miller has sought summary judgment against Trans Union on the basis that Trans Union has produced documents which prove wilful violations of the FCRA. As more fully discussed above, there are questions of fact as to whether either the October 2013 Credit Report or the July 2014 Credit Report is in violation of the FCRA. She has, however, identified evidence from

---

[4]These same inquiries are prohibited from being disclosed on credit reports issued to entities other than the consumer that is the subject of the credit report. 15 U.S.C. § 1681b(c)(3).

which a reasonable juror could conclude that the June 2014 Credit Report violates the FCRA.

Miller admits that she has no actual damages resulting from Trans Unions actions. (Plaintiff Carin Miller's Supplemental Responses To Defendant Trans Union's First Set of Interrogatories To Plaintiff, Interrogatory Nos. 10 and 11, doc. # 40-1.) She seeks only statutory damages and attorneys' fees. (Id.)

The FCRA provides for statutory damages, punitive damages and attorneys' fees for wilful noncompliance. 15 U.S.C. § 1681n. To show wilful noncompliance, a plaintiff must show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others," but need not show "malice or evil motive." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997). However, there is no wilful noncompliance when the defendant exhibited no ill will toward the plaintiff and acted to fix the alleged problem.

Miller asserts that the June 2014 and July 2014 Credit Reports were produced by Trans Union on August 1, 2014, in response to the Court's Order docketed on July 21, 2014. The June 2014 Credit Report filed with Miller's Affidavit indicates that it was issued on June 4, 2014, which is before the Court's Order and the July 2014 Credit Report indicates that it was issued on July 31, 2014, which is after the Court's Order.

Miller has presented no evidence of wilful noncompliance. Further, Trans Union must have quickly corrected any alleged noncompliance because both the June 2014 Credit Report (which was not in compliance) and the July 2014 Credit Report (which was in compliance) were presented on the same day. Without evidence of wilful noncompliance, Miller is not entitled to the requested summary judgment on her claim regarding the June 2014 Credit Report provided via discovery by Trans Union.

In sum, Miller's Motion for Summary Judgment (doc. #63) is DENIED. Since Miller is the Plaintiff in this lawsuit, this lawsuit remains to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio this Fifth Day of November, 2014.

                              **s/Thomas M. Rose**
                              _____
                              THOMAS M. ROSE
                              UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record