UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**CARIN MILLER,**

   **Plaintiff,**

-v-

**EXPERIAN INFORMATION SOLUTIONS INC., et al.,**

   **Defendants.**

Case No. 3:13-cv-090

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING MILLER'S MOTION TO STRIKE (Doc. #95) AND GRANTING TRANS UNION'S MOTION FOR SUMMARY JUDGMENT (Doc. #89)**

---

  Plaintiff Carin Miller ("Miller") has filed an Amended Complaint against Defendants Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), Transunion LLC ("Trans Union"), Wites & Kapetan, P.A. ("W & K"), Infinity Marketing Solutions, Inc. ("Infinity"), Equifax Information Services LLC ("Equifax Information") and Doe Company Debt Collector. (Doc. #41.) Therein, Miller sued all of the Defendants for violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq. Miller also sued, what she terms, the "Debt Buyers" for invasion of privacy - wrongful intrusion. In her Amended Complaint, she defines the "Debt Buyers" as W & K, Infinity and Doe Company Debt Collector. (Doc. #41, ¶ 12.)

  The Doe Company Debt Collector has not yet been identified. Experian and W & K have been dismissed by Miller. (Doc. #56.) Infinity has been served but has not answered or otherwise defended within the allotted time. Therefore, Infinity has been adjudged to be in default (doc. #25), but the Court has elected to not yet enter default judgment against Infinity (doc. #28). On

June 19, 2014, Miller filed a Notice of Settlement with Defendants Equifax and Equifax Information, although the stipulated dismissal with prejudice of these two Defendants specified in the Notice of Settlement has not yet been filed. (Doc. #45.) The only remaining active Defendant, then, is Trans Union.

On August 22, 2014, Miller sought summary judgment against Trans Union. (Doc. #63.) That Motion was denied on November 5, 2014. (Doc. #88.)

Now before the Court is Trans Union's Motion for Summary Judgment. (Doc. #89.) This Motion is now fully briefed and ripe for decision. Also before the Court is a Motion To Strike a Declaration submitted by Trans Union as part of its Motion for Summary Judgment. (Doc. #95.) This Motion, too, is now fully briefed and ripe for decision.

The Motion To Strike will first be addressed. This will be followed by the relevant factual background, the standard of review for motions for summary judgment, other relevant legal provisions and an analysis of Trans Union's Motion for Summary Judgment.

## MOTION TO STRIKE

Trans Union submitted the Declaration of Michelle Simms ("Simms Decl.") as an exhibit to its Motion for Summary Judgment. Michelle Simms ("Simms") is Senior Director of Operations for Trans Union, and her Declaration, at issue here, is dated November 18, 2014.

Miller moved to strike Simms' Declaration because it: (a) bears a false attestation; (b) is inherently inconsistent with prior deposition testimony; and (c) fails to comply with Fed. R. Civ. P. 26(a) (initial disclosures) and 26(e) (duty to supplement).

The Court does not find it necessary to refer to Simms' Declaration to decide the pending Motion for Summary Judgment. However, in the interest of expediting a possible appeal, the

Court will decide the Motion To Strike.

## False Attestation

Miller asserts that Simms falsely attested that she had personal knowledge of Trans Union Interactive, Inc.'s ("TUI's") processes in her Declaration dated November 18, 2014.[1] Yet, in her sworn deposition taken on October 8, 2014, Simms testified that her understanding of TUI's processes came from Kate Anderson at TUI.[2] (Deposition of Michelle Simms ("Simms Dep.") 22 Oct. 8, 2014.) Trans Union responds that Simms was Trans Unions' 30(b)(6) representative and was, therefore, permitted to offer testimony on TUI's processes.

On August 1, 2014, Trans Union produced documents pursuant to the Court's Order of July 21, 2014. (Doc. #60.) Included were documents that Trans Union independently obtained from TUI, a non-party.

In response to Miller's initial notice of Trans Union's Rule 30(b)(6) deposition, Trans Union moved for a protective order arguing that Miller should be required to get testimony regarding TUI from TUI. Miller then successfully argued that Trans Union was the proper party to be deposed on, among other things, all documents produced by Trans Union in discovery. The Court ordered Trans Union to make a Rule 30(b)(6) representative available to testify regarding, among other things, the TUI documents produced by Trans Union. During Simms' Deposition, Miller's attorney asked questions regarding TUI, but elected not to ask specifically about the

---

[1] TUI is a wholly-owned subsidiary of Trans Union.

[2] Kate Anderson's Declaration has been struck by the Court (doc. #88) because she was not identified by Trans Union as a witness. Simms was identified by Trans Union as a Rule 30(b)(6) witness to testify based upon the organization's collective knowledge and the witness's personal knowledge.

TUI Credit Monitoring Order Form and the TUI Service Agreement.[3] In addition, Simms was deposed regarding all of the topics in the declaration that Miller now wishes to strike.

Simms was provided as a Rule 30(b)(6) representative. She testified, pursuant to a Court Order and answered very specific questions by Miller's attorney about the nature of TUI's credit monitoring services.

Trans Union should not be penalized because Miller's attorney elected to not ask Simms questions about certain TUI issues when given an opportunity to do so by the Court. Also, Trans Union later provided information regarding the TUI Credit Monitoring Order Form and the TUI Service Agreement through Simms, a witness ordered by the Court to testify on the very issues. Miller has not shown that Simms' Declaration should be struck because Miller doesn't think that Simms had personal knowledge about TUI, particularly when Miller's attorney insisted on examining Simms, Trans Union's 30(b)(6) representative, about TUI.

Miller also asserts that Simms' Declaration is false because Exhibit 3-A to Simms' Declaration expressly recited: "Anne, you're one step closer to your **FREE** score and monitoring." This, according to Miller, cannot be the online order form that Miller used because Miller has never been called "Anne." Trans Union responds that Miller's argument misstates the Simms Declaration which states only that a copy of the TUI credit monitoring order form is attached, and not that the specific form that Miller used is attached.

Simms' Declaration states, "[a]t the time she purchased the Credit Monitoring Report

---

[3]Simms' Declaration includes reference to copies of TUI's Credit Monitoring Order Form and Service Agreement. Miller was provided with these documents in discovery and granted the right to inquire about them at Simm's Deposition. Simms also testified that she was enrolled, herself, in TUI"s credit monitoring service. (Simms Dep. 163-63.)

from TUI, Plaintiff first entered her identifying information into the online TUI credit monitoring order form, a true and accurate copy of which is attached hereto as Exhibit 'A.'" Simms Declaration can be read to say that Exhibit A is a copy of TUI's credit monitoring order form and not necessarily a copy of the actual form that Miller submitted. Therefore, the Court cannot find Simms' declaration regarding Exhibit A to be false, provided that Exhibit A is considered to be a sample order form and not Miller's actual order form.

### **Inherently Inconsistent**

Miller asserts that Simms' Declaration is inherently inconsistent. However, Miller does not argue, beyond the "false attestation" argument, how Simms' Declaration is internally inconsistent. Also, Trans Union offers no argument on this specific issue. Therefore, this issue will not be further considered.

### **Fails To Comply With Rules 26(a) and 26(e)**

Finally, Miller asserts that Simms' Declaration should be struck because Trans Union failed to comply with Fed. R. Civ. P. 26(a) and 26(e). More specifically, Trans Union never identified Simms as having any information relating to TUI. Trans Union responds that, although it never identified Simms as having any information relating to TUI, it was ordered by the Court to provide a witness on four topics, including the TUI documents produced by Trans Union.

Rule 26(a)(1)(A) requires a party to provide the name of each individual likely to have discoverable information and the subject of that information, that the disclosing party may use to support its claims or defenses. Rule 26(e) requires the disclosures made under Rule 26(a) to be supplemented or corrected in a timely manner or as ordered by the Court. Finally, Rule 37(c)(1)

provides that, if a party fails to provide information or identify a witness, as required by Rule 26(a) or (e), the party may not use that information or witness to supply evidence on a motion unless the failure was substantially justified or harmless.

Initially, Trans Union never identified Simms as having any information relating to TUI. However, as more fully set forth above, at Miller's urging, the Court ordered Trans Union to testify about the TUI forms that Trans Union provided in discovery. Further, Simms was Trans Unions' Rule 30(b)(6) witness. So Simms was essentially ordered to testify about TUI, and Miller's attorney subsequently had a full opportunity to examine Simms about issues, including TUI. Thus, Miller cannot now be heard to complain about Simms' testimony.

### Conclusion

Miller has not shown that Simms' Declaration should be struck. Miller's Motion To Strike (doc. #95) is overruled. Simms' Declaration is not considered below but it could have been.

### RELEVANT FACTUAL BACKGROUND[4]

When this lawsuit was filed, Miller was a resident of Ohio. (Am. Compl. ¶ 2.) Trans Union is a nationwide credit reporting agency. (Id. at ¶ 6.) It is undisputed that Miller is a consumer and Trans Union is a nationwide credit reporting agency.

Miller's Deposition was taken on August 12, 2014. She testified that, in preparation for her application to the bar, she obtained what she terms a "free credit report" (the "October 2013 Report"). (Deposition of Carin R. Miller ("Miller Dep.") 60 Aug. 12, 2014.) According to

---

[4]For purposes of a motion for summary judgment, the facts are viewed in a light most favorable to the nonmoving party, Miller in this case.

Miller's testimony, she went to the FTC website to find out how to obtain the free credit report. (Id.) There she was provided with a link to another page termed "annualcreditreport.com." (Id.) She then followed the prompts which took her to different credit bureaus, including Trans Union. (Id. at 60-61.) Miller does not remember what the text of the link said when she clicked on Trans Union. (Id. at 64.)

At this point in her Deposition, Miller is referring to what is termed Exhibit 5. (Id. at 60.) Exhibit 5 is a report that is captioned "Online Personal Credit Reports & Credit Scores - TransUnion Credit Monitoring." (Miller Dep. Ex. 5.) This report indicates that it is from the website "tui.transunion.com" and is dated October 3, 2013, at 6:22 a.m. (Id.)

Miller received an email receipt for obtaining the October 2013 Report. (Miller Dep. 73-75.) She received this email from transunion@e-tui.transunion.com. (Id.) This email references details of the ordering of a three-bureau-credit-monitoring-report. (Id.) Further, the October 2013 Report indicates that the credit reporting agencies are TransUnion, Experian and Equifax. (Affidavit of Carin Miller ("Miller Aff.") Ex. A Aug. 19, 2014.)

Miller later submitted an Affidavit dated August 19, 2014. Therein she states that she ordered a consumer report from www.transunion.com. (Id. at ¶ 2.) She attaches a copy of this report to her Affidavit as Ex. A. This report is captioned "Online Personal Credit Reports & Credit Scores - TransUnion Credit Monitoring." (Miller Aff. Ex. A.) This report indicates that it is from the website "tui.transunion.com" and is dated October 3, 2013, at 6:22 a.m. (Id.)

In her Deposition, Simms is asked about "29." But, there is no exhibit 29 included with her Deposition nor is "29" further identified in the briefing papers.

Trans Union provides only consumer disclosures through annualcreditreport.com.

(Simms Dep. 91.) Trans Union does not provide a credit report through annualcreditreport.com. (Id. at 92.)

In addition, Trans Union provides a credit monitoring service that the consumer specifically signs up for. (Id. at 98.) This credit monitoring allows consumers to monitor their credit and the elements that appear on a credit report that would be considered for credit decisions by financial institutions. (Id. at 98-99.) The credit monitoring report would contain the same information found in credit reports provided to third-parties. (Id. at 97.)

Trans Union has no record of Miller requesting a consumer disclosure from Trans Union or through www.annualcreditreport.com. (Id. at 90.) Further, Trans Union has no "inquiry" associated with Miller showing that Miller made such a request. (Id.) Trans Union does, however, have a record of Miller making a request for her TUI Credit Monitoring Report from TUI on October 3, 2013 at 6:22 a.m. (Id. at 167; Ex. 18.)

## STANDARD OF REVIEW

Trans Union's Motion for Summary Judgment is brought pursuant to Fed. R. Civ. P. 56. Rule 56 and its associated caselaw establish the standard of review for summary judgment.

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance

of the evidence that the nonmoving party is entitled to a verdict. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## RELEVANT LEGAL PROVISIONS

Miller claims that Trans Union has violated the FCRA. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b). A "consumer" is defined in the FCRA as "an individual." 15 U.S.C. § 1681a(c). A consumer reporting agency is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. §1681a(f).

The FCRA provides for two (2) types of reporting regarding consumers - a consumer

report and a disclosure to consumers. A third type of report, although not governed by relevant legal provisions, is at issue in this case. It is termed a "credit monitoring report."

Finally, the FCRA provides for compensatory damages, statutory damages, punitive damages and attorneys' fees for wilful noncompliance. 15 U.S.C. 1681n. To prove wilfulness, a plaintiff must show that a defendant acted knowingly or recklessly when committing a violation. *Safeco Insurance Company of America v. Burr,* 551 U.S. 47, 57-58 (2007). Further, only defendants who wilfully violate the FCRA are subject to liability under Section 1681n. *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)

### Consumer Report

A "consumer report" is defined in the FCRA as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumers eligibility for… credit." 15 U.S.C. § 1681a(d). Section 1681b lists the permissible purposes of consumer reports. For example, promotional inquiries are generally prohibited from being disclosed on consumer reports. 15 U.S.C. § 1681b(c)(3). Finally, consumer reports are generally termed "credit reports." (See Simms Dep. at 81, 83.)

### Disclosure To Consumer

Section 1681g describes "disclosures to consumers." This section requires every consumer reporting agency to clearly and accurately disclose certain information to the consumer including all information in the consumer's file at the time of the request with certain

exceptions. 15 U.S.C. § 1681g(a). Consumer reporting agencies must also disclose each person that procured a consumer report for any purpose during the one-year period preceding the date on which the request is made and a record of all inquiries received during the one-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer. 15 U.S.C. § 1681g(a)(3)(A)(ii) and 1681G(a)(5). Thus, promotional inquiries must be included in disclosures to consumers. 15 U.S.C. § 1681g(a)(5). One of the primary differences between a consumer report and a disclosure to a consumer is the inclusion of promotional inquiries in consumer disclosures and not in consumer reports. (Simms Dep. at 96.)

      According to Simms, a consumer disclosure is a "picture" of everything on a consumer report including "hard" inquiries that consumers have requested "and given permissible purpose to post" and any soft inquiries that got posted as a result of campaigns. (Simms Dep. at 51.) A "hard" inquiry is "an offer of credit or a request from a consumer to get credit pulled." (Id.) There are two (2) types of "soft" inquiries. (Id. at 52.) One is for professional purposes - either solicitations or monitoring inquiries. (Id.) The other is an account review made by credit monitoring services. (Id.) Specifically, "hard" inquiries are made for requests for firm offers of credit and the "soft" are for either promotional or monitoring purposes. (Id.)

      The FCRA requires that consumer reporting agencies make consumer disclosures once during any 12-month period without charge to the consumer. 15 U.S.C. § 1681j(a)(1)(A). The Section governing consumer disclosures provides that free credit reports are available at AnnualCreditReport.com. 15 U.S.C. § 1681j(g)(1). Thus, the free annual credit report is a consumer disclosure. (See Simms Dep. 95.) It is a consumer disclosure because it is announced

in the FCRA section regulating consumer disclosures.

### Credit Monitoring Report

Consumer reporting agencies also make credit monitoring available to consumers. (Simms Dep. at 98.) The purpose of the credit monitoring report provided by TUI is to provide consumers with the information that would be provided to prospective creditors so that consumers can track and evaluate their credit-worthiness. (Id. at 98-99.) TUI's credit monitoring report monitors the consumer's performance and how lenders would view them. (Id.)  Finally, if credit monitoring is not provided by a consumer reporting agency as defined in the FCRA, the credit monitoring report is not regulated by the FCRA. So a credit monitoring report is a report provided to a consumer but not by a consumer reporting agency. (Simms Dep. at 83, 92.)

Credit monitoring reports are not governed by the FCRA, and, therefore, do not involve relevant legal provisions. A discussion of credit monitoring reports is included here, however, because they are relevant to the issue at hand.

### ANALYSIS

Miller has pursued various claims against Trans Union at various times during this litigation. Therefore, the Court must determine what is/are Miller's current complaint(s).

### Miller's Original Complaint

Miller's original Complaint (doc. #1), filed on March 26, 2013, alleges that Trans Union violated the FCRA when it provided her consumer report to Defendants W&K and Infinity. (Compl. ¶ 30.) Simms has testified that Trans Union has never provided a credit report regarding Miller to W&K or Infinity (Simms Dep. 35-36), and Miller has provided no reliable evidence that Trans Union did.

After Miller received the October 2013 Report in October of 2013, she filed an Amended Complaint. (Doc. #37.) The Amended Complaint was filed on June 2, 2014. In the Amended Complaint, Miller adds a charge that Trans Union violated the FCRA because the October 2013 Report did not include any inquiries from Mobiloans and she had received an offer of credit from Mobiloans which indicated that the offer was based upon information in Miller's credit report. (Am. Compl. ¶¶ 22-23, 29-32.)

Then, on October 31, 2014, this Court determined that Miller was claiming that TransUnion violated the FCRA in two ways: (1) by providing Miller's consumer report to one or more third parties (specifically, now-dismissed party W& K) without a permissible purpose; and (2) by selling or disseminating pre-screened lists including Miller's credit information, and failing to list such sales or disseminations on Miller's consumer report. (Doc. #86.) With one exception to be explored below, Miller has provided no reliable evidence that Trans Union violated the FCRA.

## Miller's Current Claim

On August 22, 2014, Miller filed a Motion for Summary Judgment against Trans Union. (Doc. #63.) Therein, she alleged that Trans Union has wilfully violated the FCRA by deliberately failing to disclose certain required information, and by intentionally providing a "credit monitoring product" instead of a complete consumer report. Therein, Miller identifies three (3) reports that she received. One was allegedly from Trans Union and the other two (2) were provided to Miller pursuant to this Court's Order by Trans Union during discovery. The two reports provided by Trans Union during discovery cannot be the subject of an FCRA claim by Miller because they were not requested by Miller as required by section 1681g. Further,

Simms has testified as to why these two (2) reports are not violations of the FCRA and Miller has not argued otherwise. (Simms Dep. 45-48.)

Finally, in her Memorandum In Opposition to Trans Union's Motion for Summary Judgment, Miller primarily discusses the October 2013 Report. Mention is made of the other two (2) reports discussed in the Motion for Summary Judgment that she filed, but they are not actionable as discussed above.

Thus, the issues about which Miller complains have changed throughout this litigation. For purposes of Trans Union's Motion for Summary Judgment, allegations regarding the October 2013 Report will be considered to be Miller's only remaining complaint against Trans Union.

### Analysis of Summary Judgment On Current Claim

Trans Union argues that summary judgment should be granted because it has not violated FCRA §§ 1681b and 1681g and because Miller has no actual damages and there is no evidence of wilful violation of the FCRA by Trans Union. Each will be addressed seriatim.

### Violation of the FCRA

Miller's Amended Complaint alleges that Trans Union violated the FCRA when it failed to list the sale or dissemination of pre-screened lists on Miller's "consumer report." (Am. Compl. ¶ 62.) The "consumer report" to which Miller refers is the October 2013 Report.

The October 2013 Report is a report issued by TUI. At the top, it indicates, "Online Personal Credit Reports & Credit Scores - TransUnion Credit Monitoring.' At the bottom, the October 2013 Report indicates that it was printed from "http//tui.transunion.com…." Finally, Miller received an email receipt for obtaining the October 2013 Report from transunion@e-

tui.transunion.com.

There is no evidence that TUI is a consumer reporting agency as defined by the FCRA. There is, however, evidence that TUI issues credit monitoring reports such as the October 2013 Report received by Miller. There is also evidence that the report Miller alleges she received in October of 2013 is a credit monitoring report and that it was issued by TUI. Thus, the October 2013 Report is a credit monitoring report, and it was issued by TUI.

Miller attempts to show that she received the October 2013 Report from Trans Union but her story is told two (2) different ways. At her deposition on August 12, 2014, Miller testified that she obtained the October 2013 Report by going through the "annualcreditreport.com" website to a Trans Union website. In an Affidavit dated August 18, 2019, Miller affirms that she received the October 2013 Report from www.transunion.com. In both cases, the report that Miller is referring to is the October 2013 Report, which, as determined above, came from a TUI website.

The October 2013 Report was provided by TUI and is, therefore, not governed by the FCRA. Thus, Miller cannot show that the FCRA was violated by the October 2013 Report.

Miller claims the October 2013 Report is a credit report that violates the FCRA because an "account review inquiry" appears on the October 2013 Report. However, as determined above, the October 2013 Report is not a credit report, it is a credit monitoring report. Further, TUI says that it treats its credit monitoring reports as consumer disclosures and consumer disclosures that are regulated by the FCRA include account review inquiries.

Miller also argues that she necessarily ordered a consumer report, and not merely a credit monitoring report, because (1) she ordered her consumer report through annualcreditreport.com; (2) Trans Union provides only consumer disclosures through annualcreditreport.com; and (3)

Trans Union did not provide a credit report through annualcreditreport.com. First, no matter what she thinks she may have ordered, she received a credit monitoring report from TUI. Second, just because she went through the annualcreditreport.com website, does not necessarily infer that what she ended up receiving was a credit (consumer) report or a consumer disclosure. Third, there is no reliable evidence that Miller received anything from Trans Union by going through the annualcreditreport.com website. Thus, this argument is unavailing.

Miller also attempts to convince the Court that she ordered a complete consumer report from Trans Union because she says she ordered a complete consumer report from Equifax and Experian on the same day as she ordered the October 2013 Report. However, this argument is unconvincing. The Court does not know why Miller ordered a credit monitoring report from TUI and yet, according to herself, ordered consumer reports from Equifax and Experian on the same day, but she may have.

Finally, Miller asserts that this Court has already determined that, "there is a question of fact as to whether Miller asked for and received a credit report or a credit monitoring report." This determination was made in an Order denying Miller summary judgment and was based upon the evidence presented therein and the burdens-of-proof for a motion made by Miller. The determination here that Miller received a credit monitoring report is based upon the Rule 56 evidence, or lack thereof, associated with Trans Union's Motion for Summary Judgment and upon a careful reading of all of the relevant law.

In sum, Miller has not presented any reliable evidence that Trans Union violated the FCRA. Thus, there are no genuine issues of material fact and Trans Union is entitled to judgment as a matter of law on Miller's claim that Trans Union violated the FCRA.

**Damages**

Millers' Amended Complaint asserts that she is entitled to actual and punitive damages, statutory damages, attorney's fees and costs due to the harm she suffered and due to Trans Union's wilful conduct. Miller specifically argues that Trans Union has wilfully violated the FCRA by deliberately failing to disclose certain required information and by intentionally providing a "Credit Monitoring Product" instead of a complete consumer report. Trans Union seeks summary judgment on this issue because it did not violate the FCRA and because Miller admits that she has no actual damages and there is no evidence of any wilful violation of the FCRA by Trans Union.

Miller admits that she has no actual damages resulting from Trans Unions actions. (Plaintiff Carin Miller's Supplemental Responses To Defendant Trans Union's First Set of Interrogatories To Plaintiff, Interrogatory Nos. 10 and 11, doc. # 40-1.) She seeks only statutory damages and attorneys' fees. (Id.)

The FCRA provides for statutory damages, punitive damages and attorneys' fees for wilful noncompliance. 15 U.S.C. § 1681n. To show wilful noncompliance, a plaintiff must show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others," but need not show "malice or evil motive." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997). However, there is no wilful noncompliance when the defendant exhibited no ill will toward the plaintiff and acted to fix the alleged problem.

Miller has not shown that she is entitled to any damages from Trans Union. This is because she has not shown that Trans Union violated the FCRA. In addition, Miller has admitted that she has no actual damages and she has not identified evidence of wilful noncompliance.

**SUMMARY**

There are no genuine issues of material fact and Miller has not presented evidence that Trans Union violated the FCRA. Further, Miller is not entitled to damages. Therefore, Trans Union's Motion for Summary Judgment (doc. #89) is GRANTED.

Miller has moved for default judgment against Infinity (doc. #26), the only Party remaining in this case. The Court declined to grant default judgment at the time without prejudice to renewal of the motion for default judgment after the claims against W&K and Doe Company Debt Collector have been resolved.

Doe Company Debt Collector has yet to be identified and W&K was dismissed by Miller on June 13, 2014 (doc. # 42) The dismissal of W&K was subsequently approved by the Court on July 17, 2014. (Doc. # 56.) Thus, Doe Company Debt Collectors is not relevant and the claims against W&K were resolved by July 17, 2014 at the very latest.

Pursuant to a Notice of Settlement (doc. #45), Defendants Equifax and Equifax Information Services are dismissed. Also, to date, Miller has elected to not renew her motion for default judgment against Infinity.

Therefore, Miller is given until not later than fourteen (14) days following entry of this Order to renew a motion for default judgment against Infinity. Failure to do so will result in the captioned cause being terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Twelfth Day of February, 2015.

                                                **s/Thomas M. Rose**

                                    THOMAS M. ROSE
                        UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record