**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CARIN MILLER,                                    Case No. 3:13-cv-00090

        Plaintiff,                              Judge Thomas M. Rose

v.

EXPERIAN INFORMATION SOLUTIONS
INC., et al.,

        Defendants.
_____

**ENTRY AND ORDER GRANTING MOTION TO REOPEN CASE (DOC. 122);
GRANTING IN PART TRANS UNION, LLC'S BILL OF COSTS (DOC. 104);
AND GRANTING IN PART AND DENYING IN PART TRANS UNION, LLC'S
MOTION FOR ATTORNEY FEES AND SANCTIONS PURSUANT TO RULE 11,
28 U.S.C. § 1927, AND 15 U.S.C. § 1681 (DOC. 105)**
_____

        This case is before the Court on the Motion to Reopen Case and For Consideration of

Defendant Trans Union's Fully Briefed Motion for Attorneys' Fees and Sanctions Pursuant to Fed.

R. Civ. P. 11, 28 U.S.C. § 1927 and 15 U.S.C. § 1681 and Fully Briefed Bill of Costs ("Motion to

Reopen Case") filed by Defendant Trans Union, LLC ("Trans Union").   (Doc. 122.)   For the

reasons below, the Court **GRANTS** the Motion to Reopen Case (Doc. 122), **GRANTS** Trans

Union's Bill of Costs (Doc. 104), and **GRANTS IN PART** and **DENIES IN PART** Trans

Union's Motion for Attorney Fees and Sanctions (Doc. 105).

I.     <u>**BACKGROUND**</u>

    A. <u>**Overview**</u>

        On March 26, 2013, Plaintiff Carin Miller ("Miller") brought this lawsuit against

Defendants Trans Union, Experian Information Solutions ("Experian"), Equifax, Inc. ("Equifax"),

Infinity Marketing Solutions, Inc. ("Infinity"), Wites & Kapetan, P.A. ("Wites & Kapetan"), and

Doe Company Debt Collector.  (Doc. 1.)  In the original Complaint, Miller alleged that Trans Union, Experian and Equifax violated the Fair Credit Reporting Act ("FCRA") by providing Miller's credit report to Wites & Kapetan, a law firm that offers debt settlement services, and Doe Company Debt Collector without a permissible purpose.  (*Id.* at ¶¶ 26-33.)  Pursuant to settlements, Miller later dismissed with prejudice her claims against Experian, Equifax, and Wites & Kapetan.  (Docs. 42, 43, 45.)  Miller obtained a default judgment against Infinity.  (Doc. 117.)  Miller never identified the Doe Company Debt Collector named as a Defendant.

On June 16, 2014, Miller was granted leave to file an Amended Complaint, which was deemed filed as of that date.  On February 13, 2015, the Court granted Trans Union's motion for summary judgment, after which Trans Union promptly filed a Bill of Costs and Motion for Attorney's Fees against Miller and her counsel.  (Docs. 102, 104, 106.)  When Miller appealed the Order granting summary judgment for Trans Union, the Court overruled Trans Union's Bill of Costs and Motion for Attorney's Fees subject to renewal after the Sixth Circuit ruled on Miller's appeal.  (Doc. 116.)

On March 17, 2016, the Sixth Circuit affirmed summary judgment for Trans Union. (Doc. 120.)  On April 11, 2016, the Sixth Circuit issued a mandate pursuant to its decision, which returned the case to this Court.  (Doc. 121.)  On March 14, 2016, Trans Union filed the Motion to Reopen Case that is now before the Court.  (Doc. 122.)  That motion is now fully briefed and ripe for the Court's consideration.  (Docs. 123, 124.)

### B.  Summary of Case before District Court

The Sixth Circuit's Order contains the following detailed summary of the proceedings before this Court:

2

Miller was a regular user of credit cards and accumulated an outstanding balance on one or more of those cards in the amount of $16,000. Wites & Kapetan sent a letter to Miller on March 28, 2011 offering to assist her in the settlement of her debts. The letter stated that Wites & Kapetan had "obtained your name and address from a data company, which indicates that you may have approximately 16,000 [sic] in unpaid credit card bills and/or other unsecured debt." W & K Letter, Page ID 7. The letter advised Miller that Wites & Kapetan "do[es] not have any other information regarding your situation." *Id.* That proviso included a footnote reading: "To further explain, we do not have your social security number, account names or numbers, your Credit Report, or any other information about you other than what is indicated in this letter." *Id.* Miller assumed Wites & Kapetan had gained access to her credit report, despite the fact that Wites & Kapetan explained that it did not have her credit report. Nevertheless, and with no more information, Miller filed her complaint.

In her complaint, Miller alleged that the consumer reporting agency defendants furnished consumer credit reports without a permissible purpose in violation of §§ 1681b & 1681e(a) of the Act. Defendants Wites & Kapetan, Infinity, and Doe allegedly purchased Miller's debt information which, Miller suggested, Wites & Kapetan ultimately used to offer her debt settlement services. She further alleged that defendants Wites & Kapetan, Infinity, and Doe committed the tort of invasion of privacy, specifically by intruding upon her seclusion, when they acquired her information from the consumer reporting agency defendants.

Miller then filed an amended complaint. Since the amended complaint was untimely, it was initially stricken, but the district court granted Miller leave to amend on June 16, 2014. Around the time Miller amended her complaint, Experian and Equifax were dismissed by stipulation. At that point, Trans Union was the only remaining consumer reporting agency defendant and the only active defendant left in the case. Miller's amended complaint stated a new claim against Trans Union. This claim was predicated on a report that Miller alleged she requested from Trans Union on October 3, 2013, over six months after her initial complaint was filed.

Miller's amended complaint contained allegations that originated with a credit offer Miller received in the mail. On August 15, 2013, she received from Mobiloans what she describes as "a prescreened offer of credit" based on information in her credit report. Am. Compl. ¶¶ 22–23, Page ID 285. The Mobiloans offer included a "Prescreen & Opt–Out Notice" that read, in part: "If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll-free at 1–888–5OPT–OUT (1–888–567–8688), or visit the website at, www.optoutrequest.com; or write: TransUnion Opt–Out Request, P.O. Box 505, Woodlyn, PA 19094–0505." Mobiloans Offer, Ex. E, Am. Compl., Page ID 386. Because the Mobiloans offer included a Trans Union opt-out address, Miller assumed that Mobiloans must have

3

obtained her credit report from Trans Union.

Miller then sought to obtain a consumer disclosure of her credit file to review the suspected Mobiloans credit inquiry. Although Miller initially navigated to the Federal Trade Commission website and then to annualcreditreport.com, she admits that she eventually navigated away from annualcreditreport.com and "went to a TransUnion website." Miller Dep. 73, Page ID 1536. What she ordered was the October 2013 Report from TUI. The Report bears the name and logo of Trans Union at the top, but the printed root URL in the footer is, https://tui.transunion.com. Oct. 2013 Rep., Ex. A, Am. Compl., Page ID 294. In addition, Miller received a receipt for the Report sent from the email address, transunion@e-tui.transunion.com. Miller Dep. 74, Page ID 1536. To obtain the type of report Miller obtained, a user must also enter into a service agreement with TUI. That service agreement begins: "Welcome to the TransUnion Interactive web site, tui.transunion.com[.]" Service Agreement 1, Page ID 1546.

TUI, the furnisher of the October 2013 Report, is a wholly-owned subsidiary of Trans Union that is in the business of providing consumers a tool to monitor their own credit information as though they were a third party, a distinctly different product from that offered by Trans Union. Simms Dep. 98–99, Page ID 1505–06. Thus, when a consumer requests a "credit monitoring report" (what TUI titles its reports), TUI furnishes a report that reflects the information a third party would receive if it solicited his or her consumer credit report, as that term is defined in 15 U.S.C. § 1681b. *Id.* TUI compiles these reports by requesting credit information from Trans Union in the same way any other third-party user seeking consumer credit information would: by requesting it and having the request logged on Trans Union's records. *Id.* at 104, Page ID 1509 ("[TUI] acts as a person requesting a regular credit report."). TUI's reports omit promotional inquiries, such as that from Mobiloans, because those inquiries cannot be disclosed on a credit report obtained by a third party. *Id.* at 97–98, Page ID 1504–05. *See also* 15 U.S.C. § 1681a(d)(2)(B) (prohibiting from inclusion in consumer reports "any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device").

Promotional inquiries, also known as "soft inquiries," only appear in consumer disclosures under § 1681g. *See* 15 U.S.C. § 1681g(a)(5) (requiring disclosure to the consumer of "[a] record of all inquiries received by the agency during the 1–year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer"). Consumer disclosures are obtained directly from consumer reporting agencies, such as Trans Union, by requesting a consumer disclosure from annualcreditreport.com. *Id.* at 90–92, Page ID 1500–02. Consumer disclosures include soft credit inquiries, such as the hypothetical Mobiloans inquiry. *Id.* Trans Union has no record of Miller requesting a consumer disclosure through annualcreditreport.com on October 3, 2013 or at any other time. *Id.*

4

Upon review of the October 2013 Report, the Mobiloans inquiry that Miller assumed she would see was not reflected. Miller believed that the Act required the October 2013 Report to disclose the fact that Mobiloans obtained her credit report from Trans Union—although her only evidence that Mobiloans had obtained her report was the opt-out mailing address listed in the offer from Mobiloans.

On the basis of this belief, Miller amended her complaint to assert that Trans Union violated the Act by not disclosing a credit inquiry from Mobiloans in the October 2013 Report.  Miller asserted in her amended complaint that the October 2013 Report is a "consumer disclosure" governed by § 1681g and that it was furnished to her by Trans Union.  By omitting the promotional credit inquiry, Miller claimed, Trans Union violated § 1681g of the Act that requires that consumer disclosures include all promotional inquiries from the year preceding the consumer's request for the disclosure.  Miller did not invoke § 1681g in her amended complaint but she alleged that Trans Union violated the Act.

Trans Union argued in its motion for reconsideration that Miller's claims are without merit because it did not provide the Report.  Rather, Trans Union claimed, the Report was furnished by TUI, a wholly-owned subsidiary of Trans Union.  *See* Mot. for Recons., Page ID 551.  Trans Union further explained in its motion for reconsideration that the October 2013 Report is not subject to the Act because it is not a consumer disclosure.  Trans Union's motion was denied, and it answered the amended complaint on July 21, 2014.  Trans Union did not move to dismiss Miller's amended complaint.  Despite Trans Union's claims, Miller did not seek to join TUI in the lawsuit.

On August 22, 2014, Miller moved for summary judgment.  She repeated the claims in her complaint and argued that there could be no reasonable dispute of fact that the October 2013 Report was furnished to her by Trans Union.  Further, she argued that there could be no reasonable dispute of fact that the Report omitted a series of credit inquiries made into her account in the year prior to October 3, 2013.  Lastly, because Trans Union issued the Report (so Miller argued) and did not include the credit inquiries, it willfully violated the Act, meaning Miller is entitled to statutory damages, punitive damages, and attorney's fees.

Trans Union responded by repeating what had become its refrain below: it did not issue the October 2013 Report; even if it did, the Report is not governed by the Act; and, again, even if it were, Trans Union did not willfully violate the Act.  Trans Union relied predominantly on the absence of any evidence supporting Miller's claims.  First, Trans Union pointed out that the web address on the report contained the abbreviation "tui" for Trans Union Interactive, the actual issuer of the Report.  Second, Trans Union argued that Miller herself admitted in her deposition that she did not obtain the October 2013 Report from annualcreditreport.com but that she actually navigated away from the website and could not remember whence she requested the Report.  Finally, Trans Union cited the high standard that a

5

plaintiff must meet to prove a willful violation of the Act and argued that Miller produced no evidence to meet that standard.

The district court denied Miller's motion for summary judgment. It held, in relevant part, that there was a genuine dispute of material fact over whether the October 2013 Report was furnished to Miller by Trans Union. The district court noted the presence of the "tui" abbreviation in the Report's URL and in the email address that sent her a receipt for the Report. Because a jury could find that the Report was furnished by TUI, not Trans Union, the district court concluded that Miller was not entitled to summary judgment. Again, despite these claims, Miller did not seek to join TUI in the proceeding.

On November 18, 2014, Trans Union filed a motion for summary judgment. It claimed that Miller's original argument—that Trans Union provided third parties with her credit report without a proper purpose under § 1681b—was meritless because there was no evidence that any of the non-consumer-reporting-agency-defendants requested information from Trans Union. Next, Trans Union once again repeated its claims that there is no evidence connecting it to the October 2013 Report for purposes of liability under the Act. In the alternative, Trans Union argued that if it could be said to have furnished the October 2013 Report, it did so in compliance with the Act or, at a minimum, did not willfully violate the Act.

Miller offered no argument in response to Trans Union's claim that it did not disclose her credit report to third parties and, in any event, did not do so without a proper purpose. In response to Trans Union's arguments that it did not violate § 1681g, Miller repeated claims she had previously made about the October 2013 Report: she did in fact request the Report through annualcreditreport.com; she requested it from Trans Union; and the Report, which she again claimed is a "consumer disclosure," omitted inquiries from the year prior to her request for the Report.

The district court granted Trans Union's motion. It held that the October 2013 Report is unambiguous: it was produced by TUI, not by Trans Union. Trans Union Interactive, the district court also concluded, is not a consumer reporting agency, so the October 2013 Report could not be a consumer disclosure. Finally, the district court explained that even if Trans Union were subject to liability under the Act, there is no evidence that any violation alleged by Miller was willful. The district court entered summary judgment against Miller.

*Miller v. Trans Union, LLC*, 644 F. App'x 444, 445–50 (6th Cir. 2016) (footnotes omitted).

Affirming summary judgment for Trans Union, the Sixth Circuit held that no reasonable juror

could find that Trans Union violated the FCRA when TUI provided Miller a credit monitoring

report on October 3, 2013.  *Id.* at 451-56.

## II.   ANALYSIS

### A.  Trans Union's Motion to Reopen Case

Trans Union moves to reopen this case so that the Court may consider its Bill of Costs and Motion for Attorneys' Fees and Sanctions, both of which were filed shortly after the Court granted summary judgment in Trans Union's favor.   Miller does not oppose reopening the case, but does oppose the Bill of Costs and Motion for Attorneys' Fees and Sanctions.   When the Court overruled Trans Union's Motion for Attorneys' Fees and Sanctions, it expressly stated that Trans Union could renew that motion when the Sixth Court ruled on Miller's appeal.   Now that the Sixth Circuit has ruled and its mandate has issued, it is appropriate to reopen the case for that purpose. Trans Union's Motion to Reopen Case is **GRANTED**.

### B.  Trans Union's Bill of Costs

Trans Union seeks to recover its costs as the prevailing party in this lawsuit pursuant to Fed. R. Civ. P. 54 and S.D. Local Rule 54.1.   Federal Rule of Civil Procedure 54(d)(1) provides:

> ***Costs Other Than Attorney's Fees*.** Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

Fed. R. Civ. P. 54(d)(1).

S.D. Local Rule 54.1 provides:

> If the prevailing party intends to file a bill of costs, the party must do so within forty-five days from the entry of judgment unless a statute or Court order provides otherwise. A bill of costs must be prepared on Form AO 133, which is available on the Court's website, or in substantially similar form. The bill of costs must be verified in accordance with 28 U.S.C. § 1924. The Clerk shall tax costs after all parties have had an opportunity to be heard on the bill of costs pursuant to the briefing schedule

7

provided in S.D. Ohio Civ. R. 7.2. The Clerk may defer taxation of costs pending appeal. Advisory guidelines for the taxation of costs are available from the Clerk and on the Court's website.

S.D. Local Rule 54.1.

As the prevailing party in this case, Trans Union should be allowed its costs under Fed. R. Civ. P. 54. *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). Trans Union has also met the requirements of S.D. Local Rule 54.1 by timely filing a verified Bill of Costs on Form AO 133.   (Doc. 104.)

Miller objects to three items in Trans Union's Bill of Costs:   (1) the cost for expediting Michelle Simms' deposition transcript; (2) Simms' witness fees; and (3) the certified copy of Miller's deposition transcript.   (Doc. 111 at 4.)

Miller argues that Trans Union has not shown that the cost for expediting Simms' deposition transcript was necessary.   Trans Union responds that it "needed to expedite the transcript of the deposition of its Rule 30(b)(6) witness, Michelle Simms, since Ms. Simms' deposition was not completed until October 8, 2014 (more than a week after the September 30, 2014 discovery deadline) and Trans Union needed the transcript both to complete its Motion For Summary Judgment and so Ms. Simms could respond to an outstanding question raised at her deposition."   (Doc. 113 at 1-2.)   Miller noticed the deposition of Simms as Trans Union's corporate representative under Fed. R. Civ. P. 30(b)(6).   If the deposition had been noticed for completion prior to the close of discovery, then Trans Union would not have needed to expedite the transcript.   It would be unreasonable to deny Trans Union its costs for the Simms' deposition transcript when the circumstances requiring its expedition were not in Trans Union's control. The Court overrules Miller's objection to this cost.

Miller argues that Trans Union is not entitled to recover Simms' witness fees because she

8

testified on behalf of Trans Union as its corporate representative. (Doc. 111 at 2 (citing *N.J. Mfrs. Ins. Grp. v. Electrolux, Inc.*, Civil Action No. 10-1597 (AET), p. 17 (D.N.J. 2013)).) Trans Union concedes that real parties in interest or parties sued in a representative capacity are not entitled to fees or allowances as witnesses. Trans Union argues, however, that Simms' witness fees are recoverable because she was "acting as a fact witness and not acting purely as a corporate representative." (Doc. 113 at 4.)

Trans Union's argument does not withstand scrutiny. Simms appeared as a corporate representative for Trans Union in response to Plaintiff's Notice of Deposition to Trans Union, LLC (Doc. 73). The first page of her deposition transcript states that the deposition was taken "by the Plaintiff as upon cross-examination and pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure." (Doc. 93-1.) In the case cited by Trans Union, *True N. Energy, LLC v. Chicago Title Ins. Co.*, No. 3:10 CV 1100, 2011 WL 5362063 (N.D. Ohio Oct. 27, 2011), the court excluded the costs associated with a witness's testimony as a corporate representative from the amount of allowable costs. *Id.* at *5; *see also Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Library*, No. 1:99CV1701, 2007 WL 963320, at *9 (N.D. Ohio Mar. 28, 2007) ("As long as the employees appeared as witnesses, rather than as representatives of the corporation, [the prevailing party] may tax as costs the associated witness fees.") Trans Union does not identify which portions of Simms' deposition testimony purportedly constitute her personal testimony, as opposed to her testimony on behalf of Trans Union. The Court sustains Miller's objection to the recovery of Simms' witness fees for attending her deposition.

Miller also argues that Trans Union has not shown that it was necessary to obtain a certified copy of Miller's deposition transcript. Trans Union explains that Miller failed to return a signed

copy of her deposition transcript to the Court Reporter within the required 30 day period.   (Doc. 113 at 2 (citing Doc. 77 at PageID 1176).)   As a result, Trans Union was required to obtain a certified copy of Miller's deposition for citation in its motion for summary judgment, as required by S.D. Local Rule 5.4(a).   Trans Union's explanation is reasonable.   Miller's objection is overruled.

Excluding Simms' witness fees from the Bill of Costs, Trans Union is entitled to recover $1,449.40 as costs under Fed. R. Civ. P. 54.

### C.  Trans Union's Motion for Attorneys' Fees and Sanctions

Trans Union argues that Miller and her counsel violated Fed. R. Civ. P. 11(b) and that sanctions are warranted under Fed. R. Civ. P. 11(b), 28 U.S.C. § 1972, and 15 U.S.C. § 1681n. The Court addresses whether sanctions are appropriate under each of these authorities below.

### i.  Whether Sanctions Are Warranted Under Fed. R. Civ. P. 11

Rule 11 of the Federal Rules of Civil Procedure states, in relevant part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of

10

information.

Fed. R. Civ. Pro. 11(b). Rule 11 applies to each piece of paper signed by an attorney in the course of litigation. This means that an attorney may commit multiple Rule 11 sanctions in the course of a single case. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne, and Taylor, et al*., 875 F.2d 1224, 1229 (6th Cir. 1989). A court should not assess fees unless it finds the claim is frivolous, unreasonable, groundless, or the party continued to litigate after it clearly became so. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 635 (6th Cir. 2009). Additionally, Rule 11 imposes a continuing duty to dismiss claims where discovery reveals a lack of legal and factual support. *Dearborn St. Bldg. Assocs., LLC. V. Huntington Nat'l Bank*, 411 Fed. Appx. 847 (6th Cir. 2011); *see also Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (discussing Rule 11's "continuing duty of candor"); *Bailey v. Papa John's USA, Inc.*, 236 Fed.Appx. 200, 203 (6th Cir. June 11, 2007) (Rule 11 sanctions proper where, instead of withdrawing complaint or agreeing to dismissal, plaintiff "continued to litigate after it became clear that his claim was frivolous, unreasonable or without foundation"); *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (discussing continuing duty of candor under Rule 11); *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 336 (6th Cir. 1988) (discussing litigants "continuing responsibility to review and reevaluate [their] pleadings").

The two primary goals of Rule 11 are deterrence and compensation, and of the two, deterrence is the primary goal. *Jackson*, 875 F.2d at 1229. The Sixth Circuit has advised that "courts should impose the least severe sanction that is likely to deter." *Id*. Additionally, a party seeking sanctions must mitigate their damages "by acting promptly and avoiding any unnecessary expenses in responding to papers that violate the rule." *Id*. at 1230. Finally, the court must consider the attorney's ability to pay the sanction. *Id*.

Miller's original complaint alleged that Trans Union provided Wites & Kapetan with a copy of Miller's credit report through an undetermined third party. The only support Miller provided for this allegation was the letter Wites & Kapetan sent to her in 2011.  The letter contains a footnote that explicitly states that Wites & Kapetan do not have her credit report.   (Doc. 1-1.)  This singular letter served as the basis of Miller's complaint.  No further investigation seems to have taken place and no other evidence was presented to support the claims against Trans Union.  Miller, without any substantive evidence to support the allegation, elected to believe Trans Union had disclosed her credit report in violation of FCRA.  Miller and her counsel have thus failed to demonstrate that her claim would *likely* have evidentiary support after further discovery.

Miller ultimately dropped her original claim against Trans Union, and filed an amended complaint alleging a new claim against Trans Union based on a report that she ordered six months after she brought this lawsuit.   Miller's new claim alleged that Trans Union violated the FCRA by failing to disclose promotional inquiries on a consumer disclosure.  (Doc. 41.)  Miller's claim was again factually unsupported.  The service agreement that Miller entered into (Doc. 106-4) and the URLs on the report that she received (Doc. 41-1) both show the report was produced by TUI.  Thus, Miller either failed to recognize or deliberately ignored the fact that Trans Union and TUI are separate legal entities.  Miller then failed to recognize that what she had requested was not a consumer disclosure covered by § 1681g of the FCRA.  These are significant investigatory failures on the part of Miller's counsel.

Miller also filed three motions against Trans Union that were found to lack any evidentiary support or Plaintiff was found to lack the grounds to object.  Plaintiff's Motion For Sanctions

Against Trans Union For Spoliation of Evidence (Doc. 74) and Plaintiff's Motion To Show Cause Why Trans Union Should Not be Held in Contempt (Doc. 86) were found to lack evidentiary support and were summarily denied.  Plaintiff's Motion to Strike the Deposition of Michelle Simms (Doc. 95) was denied because the Court ordered Simms to testify about TUI documents and procedures at Plaintiff's request; Plaintiff, therefore, had no grounds to strike the same testimony.  (Doc. 101.)

Additionally, Miller and her counsel were put on notice by Trans Union that there was no factual basis for the claims made against the company.   Trans Union contacted Miller's counsel in June 2013 (Doc. 106-1), February 2014 (Doc. 106-3), and August 2014 (Doc. 106-4) and informed them that the claims in the complaint and the amended complaint were meritless.   While the Court would not expect plaintiff's counsel to blindly accept a defendant's assessment of plaintiff's case, the Court would expect such repeated assertions to prompt an investigation into the facts underlying plaintiff's claims.  Miller deserves some credit for ultimately dropping her original claim against Trans Union, but she then replaced it with a claim equally without merit.  Miller never agreed to dismiss that claim against Trans Union nor sought leave to add TUI as a defendant—even though Trans Union notified her counsel that TUI was the proper defendant.

 The primary goal of Rule 11 sanctions is to deter baseless accusations that lack factual support.  Yet there is also a duty on the party seeking sanctions to mitigate their damages and avoid unnecessary filings.  Trans Union arguably met this obligation by sending Miller three separate letters detailing the distinct lack of factual support for their claim and warning of Rule 11 sanctions.  On the other hand, Trans Union moved for reconsideration of the Court's order granting Miller leave to amend, but did not move to dismiss the Amended Complaint.   (Doc. 46.)

13

In the order denying the motion for reconsideration, the Court stated that "Trans Union remains free to file a motion to dismiss the Amended Complaint should it believe such a motion is appropriate." (Doc. 58.) All considered, the Court finds that Trans Union pursued a resolution of this case in a reasonable manner. It would be inaccurate to suggest that Trans Union sat on its hands and accrued defense costs while it built a case for Rule 11 sanctions; it tried to reason with Miller's counsel, but to no avail.

In the Complaint (Doc. 1), the Amended Complaint (Doc. 41), and the three discovery motions (Doc. 74, 86, 95), Miller's counsel demonstrated a disregard for the facts of the case and for the responsibility placed upon attorneys to faithfully investigate the claims they wish to pursue. All of these filings lacked evidentiary support from the beginning and are consistent with an intent to drive up the costs of this lawsuit to extort a settlement for the nuisance value of the lawsuit. There would be little use for Rule 11 if it were not employed in situations such as this, where a party aggressively pursues a claim that lacks any real evidentiary support.

The Court finds that Miller's counsel is liable for sanctions under Federal Rule of Civil Procedure 11(b)(3). The Court will determine the amount of the sanction necessary to deter such future conduct after the submission of additional briefing by the parties, as discussed below.

### ii.  <u>Whether Attorneys' Fees and Sanctions Should Be Awarded Under 28 U.S.C. § 1927</u>

Trans Union also seeks attorney's fees and costs pursuant to 28 U.S.C. § 1927, which states:

**§ 1927. Counsel's liability for excessive costs**

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

14

conduct.

28 U.S.C. § 1927. Section 1927 authorizes the assessment of fees for the "'unreasonable and vexatious' multiplication of litigation." *Fifth Third Bank v. Boswell*, 125 F.R.D. 460, 463 (S.D. Ohio 1989). In order to award fees under § 1927, the Court must find "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir.2011). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts" are all actions that the Sixth Circuit considers improper for the purposes of § 1927. *BDT Products, Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 754 (6th Cir. 2011). A meritless claim alone, however, will not suffice. *Id.*

Here, Miller's claims were meritless, but her counsel also needlessly protracted the proceedings in this case. The three discovery motions referenced above were each filed without reasonable grounds, as the Court stated in its orders. Additionally, Miller filed a Motion for Summary Judgment (Doc. 63) that lacked evidentiary support beyond Miller's own affidavit. The motion did include copies of the report that Miller attributed to Trans Union, but even that evidence supported Trans Union's consistent assertion that it was, in fact, TUI that created the report. (Doc. 63.)

The Court finds that Miller's counsel are also liable for attorneys' fees and costs reasonably incurred due to their violation of 28 U.S.C. § 1927. Again, the Court will determine the amount of the award to Trans Union after submission of additional briefing by the parties.

### iii. <u>Whether Attorneys' Fees and Sanctions Should Be Awarded Under 15 U.S.C. § 1681n</u>

In light of the Court's findings that Miller's counsel is liable for violations of Fed. R. Civ.

P. 11 and 28 U.S.C. § 1927, it declines to consider whether the same conduct also constitutes a violation of 15 U.S.C. § 1681n.   The Court has considerable discretion under Rule 11 and § 1927 to frame an appropriate award of fees and costs to Trans Union.   Any additional award under § 1681n would be duplicative of that relief.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Trans Union's Bill of Costs in the amount of $1,449.40 and **GRANTS** Trans Union's Motion for Attorney Fees and Sanctions (Doc. 105) pursuant to Rule 11 and 28 U.S.C. § 1927, but **DENIES** it with respect to 15 U.S.C. § 1681. Trans Union is **ORDERED** to file, by no later than October 14, 2016, a memorandum stating the amount of its requested attorneys' fees and why such amount is appropriate under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.   Trans Union's memorandum shall not exceed 10 pages.   Miller's counsel may file a memorandum in response to Trans Union's memorandum, also not to exceed 10 pages, by no later than October 28, 2016.   Trans Union may file a reply memorandum, not to exceed 5 pages, by no later than November 4, 2016.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, September 22, 2016.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE